**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 12-3293
_____

ROBERT MAXWELL SIMON; STACEY HELENE SIMON

Appellants

v.

FIA CARD SERVICES, N.A.; WEINSTEIN & RILEY, P.S.

_____

On Appeal from the United States District Court
for the District of New Jersey
(D. C. No. 3-12-cv-518)
District Judge:  Honorable Joel A. Pisano

_____

Argued May 22, 2013

(Opinion filed:  October 7, 2013)

Before:  RENDELL and GREENAWAY, JR., <u>Circuit Judges</u>
and ROSENTHAL, <u>District Judge</u>*


Andy Winchell, Esq. **(Argued)**
Law Offices of Andy Winchell
332 Springfield Avenue, Suite 203
Summit, NJ 07901

       Counsel for Appellants


Kenneth S. Jannette, Esq.
Susan Power Johnston, Esq. **(Argued)**
Weinstein & Riley. P.S.
14 Penn Plaza, Suite 1300
New York, New York 10122

       Counsel for Appellees

---

     \*The Honorable Lee H. Rosenthal, of the United States District Court for the Southern District of Texas, sitting by designation.

---

## O P I N I O N

---

**ROSENTHAL**, <u>District Judge</u>:

This appeal arises out of the intersection of the Bankruptcy Code and the Fair Debt Collection Practices Act. The issue is whether a debt collector's letter and notice requesting an examination under Federal Rule of Bankruptcy Procedure 2004 and offering to settle a debt, sent in a pending bankruptcy in contemplation of an adversary proceeding to challenge dischargeability, can be the basis for liability under the FDCPA.

A law firm, Weinstein & Riley, P.S., sent the letter and attached notice at issue on behalf of FIA Card Services, N.A., to both appellants, bankruptcy debtors Stacey Helene and Robert Maxwell Simon, through their bankruptcy counsel. The District Court dismissed the Simons' FDCPA suit arising from the letter and notice under Federal Rule of Civil Procedure 12(b)(6).  The District Court held that the Bankruptcy Code provided the exclusive remedy for the alleged violations and precluded the FDCPA claims.  The District Court also held that even if the FDCPA claims were not precluded, the Simons' complaint did not allege sufficient facts to state a claim.  The Simons appealed.  We will affirm in part, reverse in part, and remand.

## I.  Background

On December 30, 2010, the Simons filed for bankruptcy protection under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 701–84, in the United States Bankruptcy Court for the District of New Jersey.  *In re Simon*, No. 10-50052 (Bankr. D.N.J. filed Dec. 30, 2010). The schedules submitted to the Bankruptcy Court identified an unsecured, nonpriority claim credit-card debt owed to Bank of America (now FIA).  FIA retained Weinstein & Riley to represent it in the Simons' bankruptcy proceeding.

On January 28, 2011, Weinstein & Riley sent the letter and attached notice to both Mr. and Mrs. Simon through their bankruptcy counsel.   The letter stated that FIA was considering filing an adversary proceeding under 11 U.S.C. § 523 to challenge the dischargeability of the credit-card debt. The letter included an offer to forego an adversary proceeding if the Simons stipulated that the credit-card debt was nondischargeable or if they agreed to pay a reduced amount to settle the debt.   The letter stated that a Rule 2004 examination to gather information for filing an adversary proceeding had been scheduled for February 28, 2011, but that Weinstein & Riley was open to "discuss[ing] with your client whether the matter can be resolved without conducting the examination and/or to reschedule it for an informal telephone conference at a mutually agreeable time prior to the bar date."   The bottom of the letter set out additional information about how to challenge the debt "[i]n the event that this letter is governed by the FDCPA."

Attached to the letter was a document entitled "NOTICE OF EXAMINATION IN ACCORDANCE WITH

*F.R.B.P. 2004* AND LOCAL RULE 2004-1." The notice identified the date and time for the Rule 2004 examinations and the place as Weinstein & Riley's offices in New York City or "upon written request, at an alternate location to be agreed upon by the parties." The notice included a statement that the Simons were to bring specified documents to the Rule 2004 examinations.[1] The notice stated that "[p]ursuant to Local Rule 16, no order shall be necessary." The Simons alleged, and the appellees acknowledged at oral argument, that the notice was subject to the requirements for a subpoena

---

[1] The documents the Simons were to bring included: (1) "[a]ll cancelled checks and checking account statements maintained by Debtor for the one (1) year period prior to the date the Debtor filed bankruptcy"; (2) "[a]ll books and records evidencing Debtor's income, including payroll statements, W-2 forms and other documentary evidence of income, for the years 2008 and 2009"; (3) "[f]ederal tax returns filed by Debtor for the taxable years 2007, 2008, and 2009"; (4) "[a]ll checks, invoices, receipts of payments and statements for the Debtor and Debtor's personal expenses, including, but not limited to credit card statements, mortgage or rental payments, utility bills, insurance premiums, automobile and/or transportation expenses, entertainment and recreational expenses, clothing expenses, capital gains and losses, gambling debts, food expenses, or medical and drug expenses, for the one (1) year period prior to the date the Debtor filed for bankruptcy"; and (5) "[a]ll financial statements, inventories, and schedules reflecting Debtor's assets, liabilities and net worth, whether prepared by Debtor or on Debtor's behalf, for the one (1) year period prior to the date Debtor filed for bankruptcy."

under Federal Rule of Bankruptcy Procedure 9016 and Federal Rule of Civil Procedure 45.

At the bottom of the subpoena was a certificate signed by a Weinstein & Riley attorney. The certificate stated that "a true and correct copy of the foregoing has been mailed on January 28, 2011 to the above address." Two addresses were listed: the Simons' home in New Jersey and their bankruptcy counsel's office. The Simons allege that they did not receive a copy at their home address and that Weinstein & Riley did not in fact send a copy there. The Simons' bankruptcy counsel received the copies sent to his office.

The Simons filed a motion in the Bankruptcy Court to quash the Rule 2004 examination notices on the ground that they failed to comply with the Bankruptcy Rule 9016 and Civil Rule 45 subpoena requirements. On February 23, 2011, the Simons filed an adversary proceeding asserting FDCPA claims against FIA and Weinstein & Riley. The Bankruptcy Court quashed the Rule 2004 examination notices. The Bankruptcy Court later ruled that it lacked subject-matter jurisdiction over the FDCPA claims and dismissed them without prejudice.

The Simons then sued FIA and Weinstein & Riley in the Federal District Court for the District of New Jersey. They alleged that the letters and subpoenas violated the FDCPA prohibition on false, deceptive, and misleading debt-collection practices under 15 U.S.C. § 1692e(5), (11), and (13). The appellees moved to dismiss on three grounds: (1) the FDCPA claim was precluded by the Bankruptcy Court's earlier dismissal of the adversary proceeding the Simons had filed; (2) the complaint did not state a claim; and (3) the

allegations from which the FDCPA claims arose were governed exclusively by the Bankruptcy Code.

On July 16, 2012, the District Court dismissed the FDCPA suit, with prejudice, stating that the "FDCPA claims [were] precluded by the Bankruptcy Code" and that the complaint "does not appear to set forth sufficient factual allegations to state a claim" under the FDCPA. *Simon v. FIA Card Servs., N.A.*, Civ. No. 12-518, 2012 WL 2891080, at *4 (D.N.J. 2012).

The Simons timely appealed from the dismissal order.[2]

## II. The Standard of Review

Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). We review de novo an order granting a Rule 12(b)(6) motion. *Mariotti v. Mariotti Bldg. Prods., Inc*., 714 F.3d 761, 765 (3d Cir. 2013).

---

[2]  The District Court had jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291.

### III. Analysis

### A.  Whether the Complaint Stated Claims Under the FDCPA

Section 1692e of the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  The Simons alleged that the letter and notice violated § 1692e(5), (11), and (13).  Section 1692e(5) states that a debt collector may not make a "threat to take any action that cannot legally be taken or that is not intended to be taken."  Section 1692e(13) prohibits a debt collector from making a "false representation or implication that documents are legal process."

The Simons alleged that by sending the letter and attached notice, Weinstein & Reilly and FIA violated § 1692e(5) and (13) in four ways:

- By intentionally failing to send the letter and subpoena to the Simons and instead sending the documents to their attorney, violating Civil Rule 45(b)(1)'s requirement that subpoenas be served directly on the individuals subpoenaed.

- By specifying the location for the Rule 2004 examinations as the Weinstein & Riley office in New York, rather than in New Jersey.  The Simons alleged that this violated Civil Rule 45(a)(2)(B)'s requirement that a subpoena be issued "from the court for the district where the deposition is to be taken."

- By failing to include in the subpoena the text of Civil Rule 45(c) and (d), as Civil Rule 45(a)(1)(A)(iv) requires.

- By failing to include in the subpoena the method of recording the Rule 2004 examinations, as Civil Rule 45(a)(1)(B) requires.

Additionally, the Simons allege that Weinstein & Riley violated the FDCPA by failing to include the "mini-*Miranda*" warning required under § 1692e(11).  Under that section, a debt collector must disclose in the initial communication with the debtor that "the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose."  15 U.S.C. § 1692e(11).

### 1. The Argument that the FDCPA Did Not Apply Because There Was No "Communication" Attempting to Collect a Debt

The appellees generally contend that the FDCPA claims should be dismissed on the ground that the letter and notice sent to the Simons did not "attempt to collect a debt" under the statute because there was no demand for payment.  Instead, the appellees contend, the letter offered to "discuss a possible [nondischargeability] claim pursuant to 11 U.S.C. § 523."  Courts have not construed the FDCPA so narrowly.

The FDCPA regulates "debt collection" without defining that term.  The FDCPA states that "to be liable under the statute's substantive provisions, a debt collector's targeted conduct must have been taken 'in connection with the

collection of any debt,' *e.g.*, 15 U.S.C. §§ 1692c(a)–(b), 1692d, 1692e, 1692g, or in order 'to collect any debt,' *id.* § 1692f." *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 459–60 (6th Cir. 2013). The FDCPA does define three other relevant terms:

- "Debt" means "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

- "Debt collector" means a person "in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.*, § 1692a(6).

- "Communication" means "the conveying of information regarding a debt directly or indirectly to any person through any medium." *Id.*, § 1692a(2).

The Supreme Court held in *Heintz v. Jenkins* that a "debt collector" includes an attorney who "'regularly' engage[s] in consumer-debt-collection activity, even when that activity consists of litigation." 514 U.S. 291, 299 (1995).[3] The Simons' claims cannot be dismissed on the

---

[3] The Court in *Heintz* noted that, as originally passed, the FDCPA exempted attorneys by providing that "debt collector" did not include "'any attorney-at-law collecting a

ground that Weinstein & Riley's actions did not amount to "debt collection" covered by the FDCPA.

Nor can the Simons' FDCPA claims be dismissed on the ground that the letter and notice were not "communications" under the statute. In *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364 (3d Cir. 2011), we addressed whether a letter sent by a bank's attorneys met the FDCPA requirement for a "communication." *Id.* at 368 n.5 (citing 15 U.S.C. § 1692a(2)). The bank argued that the letter was not an actionable FDCPA "communication" because it did not make a demand for payment. We rejected that argument and noted that a "communication" need only convey "'information regarding a debt' and is not limited to specific requests for payment." *Id.* (quoting § 1692a(2)).

Opinions from other circuits provide further support for applying the FDCPA to debt collectors' communications to debtors even if there is even if there is no explicit demand for payment. In *Gburek v. Litton Loan Servicing LP*, the Seventh Circuit addressed whether two letters to a debtor who

---

debt as an attorney on behalf of and in the name of a client.'" 514 U.S. at 294 (quoting Pub. L. 95-109, § 803(6)(F), 91 Stat. 874, 875). In 1986, before *Heintz* was decided, Congress repealed the attorney exemption. Pub. L. 99-361, 100 Stat. 768. After *Heintz*, Congress amended § 1692e(11) to exempt any "formal pleading made in connection with a legal action" from the FDCPA's notice requirements. 15 U.S.C. § 1692e(11), as amended Pub. L. 104–208, § 2305(a), 110 Stat. 3009, 3009–425 (1996). Congress did not otherwise limit the FDCPA's applicability to lawyers using litigation to collect debts.

had fallen behind on her mortgage payments could be the basis for FDCPA claims.  614 F.3d 380 (7th Cir. 2010).  The letters, sent by or on behalf of a loan servicer, offered to discuss ways the debtor could avoid foreclosure and asked for the debtor's detailed, current financial information.  The Seventh Circuit held that the letters were sent "in connection with the collection of [a] debt" under § 1692e.  *Id.* at 385.  The court explained that "[t]he absence of a demand for payment is just one of several factors that come into play in the commonsense inquiry of whether a communication from a debt collector is made in connection with the collection of any debt."  *Id.*  Noting that the debtor was in default, no forbearance agreement was in place, and the letters offered to discuss foreclosure alternatives and requested financial information, the court concluded that the first of the letters was the "opening communication in an attempt to collect [the debtor's] defaulted home loan — by settlement or otherwise. Though it did not explicitly ask for payment, it was an offer to discuss [the debtor's] repayment options, which qualifies as a communication in connection with an attempt to collect a debt."  *Id.* at 386.

The Sixth Circuit adopted the Seventh Circuit's approach in *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169 (6th Cir. 2011).  In *Grden*, a law firm filed a state-court debt-collection action.  The firm sent the debtor a letter with an attachment that appeared to be a default-judgment motion. The debtor had not missed the deadline for answering the complaint.  When the debtor called the law firm, it allegedly provided him with an incorrect account balance.  The debtor filed an FDCPA claim.  The law firm moved for summary judgment on the ground that the letter with the attachment and telephone call were not communications that attempted to

collect a debt.   The Sixth Circuit held that "for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." *Id.* at 173 (citing *Gburek*, 614 F.3d at 385).   "[A] letter that is not itself a collection attempt, but that aims to make . . . such an attempt more likely to succeed, is one that has the requisite connection." *Id.*   The letter and document appearing to be a default-judgment motion gave rise to an FDCPA claim.   The telephone call, however, did not give rise to an FDCPA claim because the debtor had initiated the call, and the statements by the person answering were "merely a ministerial response to a debtor inquiry, rather than part of a strategy to make payment more likely." *Id.*

Other circuits considering related questions have similarly held that the FDCPA applies to litigation-related activities that do not include an explicit demand for payment when the general purpose is to collect payment. *See, e.g.*, *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 952 (9th Cir. 2011) ("The district court correctly held that [the defendant's] service of false requests for admission violated the FDCPA as a matter of law."); *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 228, 230–32 (4th Cir. 2007) (holding that the FDCPA applied to allegedly erroneous statements made in interrogatories and a summary judgment motion during the course of a state-court debt-collection suit).

Given *Allen*'s broad gloss on "communication" and the consistent analysis from other circuits described above, we reject the appellees' argument that the letter and subpoena Weinstein & Riley sent each appellant was not a

13

"communication" from a "debt collector" made "in connection with the collection of [a] debt." The letters stated that the Simons had defaulted on their credit obligations; FIA was considering filing adversary proceedings under 11 U.S.C. § 523 to challenge the dischargeability of their debt; Rule 2004 examinations were scheduled to gather information about dischargeability; and the Simons were to bring personal financial information and documents to the Rule 2004 examinations. The letters offered the Simons a way to avoid the Rule 2004 examinations and adversary proceedings by paying a reduced amount to settle the debt or by stipulating that the debt was nondischargeable. The letter and notice were an attempt to collect the Simons' debt through the alternatives of settlement — including by partial payment — or gathering information to challenge dischargeability. The absence of an explicit payment demand does not take the communication outside the FDCPA.[4]

---

[4] The appellees argue that the Simons' FDCPA claims fail because the complaint did not sufficiently allege facts showing that they were "consumers" under the FDCPA. A "consumer" means "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). Because the asserted failure to plead "consumer" status was raised as a basis to dismiss for the first time on appeal, we need not address it. We do note that had the District Court been given the opportunity to address this claim and dismissed on this basis, the dismissal likely would have been with leave to amend. *See Free Speech Coal., Inc. v. Att'y Gen.*, 677 F.3d 519, 545 (3d Cir. 2012) ("Leave to amend should be freely given when justice so requires, including for a curative amendment unless such an amendment would be inequitable or futile.").

### 2. The Arguments that the Complaint Did Not Allege an FDCPA Claim

#### a. The FDCPA Claims Based on Alleged Violations of Bankruptcy Rule 9016 and Civil Rule 45

The District Court found that several of the Simons' specific FDCPA allegations were contradicted by the language of the subpoenas Weinstein & Riley sent.[5] The District Court rejected the Simons' § 1692e(5) and (13) claims that the appellees violated the FDCPA because the subpoenas failed to disclose the method for recording the examination. The District Court noted that the statement in both subpoenas that "a certified court reporter or any other Notary Public or officer authorized by law to take

---

The appellees also raise for the first time on appeal the sufficiency of the Simons' allegations that Weinstein & Riley or FIA was a "debt collector" under the FDCPA. While attorneys such as Weinstein & Riley, who regularly use litigation to collect consumer debts owed to others are "debt collectors," *Heintz*, 514 U.S. 291, original creditors are not, *see Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000). Although this issue was not raised below and is not properly before us, whether FIA is a "debt collector" or a creditor may be an issue addressed on remand.

[5] The Simons attached the letter and notice directed to each of them to their complaint. The letter and notice was properly considered by the District Court under Rule 12(b)(6) and are before us on appeal. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013).

depositions" would be used for the Rule 2004 examinations was sufficient. *Simon*, 2012 WL 2891080, at *5. We will affirm this conclusion, but on a different ground. *Cardona v. Bledsoe*, 681 F.3d 533, 535 n.4 (3d Cir. 2012) ("We may affirm a district court for any reason supported by the record." (alteration and internal quotation marks omitted)). We find that the failure to specify the recording method in the subpoena did not violate Bankruptcy Rule 9016 or Civil Rule 45.

Bankruptcy Rule 9016 provides that Civil Rule 45 applies to subpoenas issued in bankruptcy cases. Civil Rule 45(a)(1)(B) requires that "[a] subpoena commanding attendance at a deposition must state the method for recording the testimony" and applies to subpoenas for depositions. Courts have recognized that a Rule 2004 examination differs from a deposition, serving different purposes and subject to different procedures.[6] *See, e.g., In re J & R Trucking, Inc.,*

---

[6] Rule 2004 examinations, "typically implemented in the pre-litigation stage of a bankruptcy case, are subject to few of the procedural safeguards normally applicable to discovery under the Federal Rules of Civil Procedure." *In re Bakalis*, 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996); *see also In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) ("As [Rule] 2004 is meant to give the inquiring party broad power to investigate the estate, it does not provide the procedural safeguards offered by [Bankruptcy Rule] 7026. For example, under a [Rule] 2004 examination, a witness has no general right to representation by counsel, and the right to object to immaterial or improper questions is limited." (citations omitted)); *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 516 (Bankr. E.D.N.Y. 1991) ("These

431 B.R. 818, 821 (Bankr. N.D. Ind. 2010) ("Although a Rule 2004 examination is obviously an investigatory device and it is conducted under oath, it should not be confused with discovery or a discovery deposition.").   Bankruptcy Rule 2004(c) provides that "the attendance of an entity for examination . . . may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial."   Civil Rule 45 does not require a subpoena for attendance at a hearing or trial to include a notice of the recording method. Civil Rule 45(a)(1)(B) and Bankruptcy Rule 9016 did not require the subpoenas Weinstein & Reilly sent to state the method for recording the Rule 2004 examinations. Accordingly, we will affirm the dismissal of the § 1692e(5) and (13) claims because there was no failure to comply with the rules.

---

examinations have been likened and countenanced as fishing expeditions and inquisitions where procedural safeguards of witnesses are at a minimum." (citations and internal quotation marks omitted)); *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) ("The proper mode of discovery which ordinarily must be utilized against a third party who may be liable to the bankruptcy estate for various wrongful acts is contained in the Federal Rules of Civil Procedure, which provide numerous procedural safeguards against unfairness to the party from which discovery is sought. . . .  By contrast, the procedural safeguards provided by Bankruptcy Rule 2004 are minimal.").   At least one court has found that the Bankruptcy Rules do not "require [Rule 2004] examinations to be transcribed or transcripts to be filed."  *In re Thow*, 392 B.R. 860, 867 (Bankr. W.D. Wash. 2007).

The District Court also dismissed the Simons' claims that the appellees violated § 1692e(5) and (13) of the FDCPA by issuing the subpoenas from the District of New Jersey for Rule 2004 examinations to be held in the Southern District of New York.  *See* Fed. R. Civ. P. 45(a)(2)(A) (providing that a subpoena must issue "from the court for the district where the hearing or trial is to be held").  The District Court dismissed this FDCPA claim on the basis that there was no underlying rule violation, finding that the subpoenas did not "compel" the Simons to appear only in New York, as they alleged.  The subpoenas stated that the examinations could take place "upon written request, at an alternate location to be agreed upon by the parties."  The Simons did not address on appeal the District Court's ground for dismissing this claim, and we find no basis for reversal.  We will affirm the dismissal of this claim.

The District Court did not find, and the appellees do not argue, that the subpoenas met Civil Rule 45's requirements that they be served directly on the individuals subpoenaed and include the text of Civil Rule 45(c) and (d). *See* Fed. R. Civ. P. 45(b)(1); (a)(1)(A)(iv).  The District Court instead dismissed the § 1692e(5) and (13) claims arising from the violations of Civil Rule 45 on the basis of preclusion. The District Court dismissed the remaining FDCPA claim under § 1692e(11) on the basis that it failed to state a claim.  This FDCPA claim, unlike the § 1692e(5) and (13) claims, does not depend on an underlying alleged violation of the Bankruptcy Rules.

### b. The FDCPA Claim Based on the Failure to Include the "Mini-*Miranda*" Warning

The District Court found that the letter sent to the Simons' bankruptcy counsel did not violate the FDCPA because it "'simply advised the attorney for the debtor that the Defendant debt collection agency believed that the debt might be non-dischargeable and it would like to settle the matter if the attorney for the debtor did not believe that there was a defense to the claim under 11 U.S.C. § 523(a)(2).'" *Simon*, 2012 WL 2891080, at *5 (quoting *Villegas v. Weinstein & Riley, P.S.*, 723 F. Supp. 2d 755, 760–61 (M.D. Pa. 2010)). The *Villegas* court first held that the FDCPA does not apply to a debt collector's communications to a debtor's attorney. The court then held that to the extent that the FDCPA applies to such communications, they should be analyzed under a "competent lawyer" standard, not the "least sophisticated debtor" standard that ordinarily applies to a debt collector's communications with a debtor. *See Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011) ("[W]e analyze communications from lenders to debtors from the perspective of the least sophisticated debtor." (internal quotation marks omitted)). The *Villegas* court concluded that under the "competent lawyer" standard, a letter advising the debtor's bankruptcy counsel of the desire to settle a potential adversary complaint did not violate the FDCPA. *Villegas*, 723 F. Supp. 2d at 760.

The Simons contend that *Villegas* is not persuasive because of our decision in *Allen*, 629 F.3d at 364. *Allen* was a mortgage foreclosure lawsuit filed on a bank's behalf against a borrower. At the request of the borrower's attorney,

the bank's attorney sent a letter quoting the amounts needed to pay off the loan, fees, and costs.  Another letter sent the same day itemized the attorney's fees and costs referred to in the previous letter.  The borrower filed a class action under § 1692f(1) of the FDCPA against the bank and the law firm, alleging that the letters misstated the charges the borrower owed and that the charges were neither authorized by contract nor permitted by law.  The defendants moved to dismiss on the basis that the FDCPA does not cover a debt collector's communication to a debtor's attorney.  The district court rejected this argument but granted the motion to dismiss because a competent attorney would have recognized the charges as incorrect.  We reversed.  Noting that the FDCPA defines "communication" broadly to include "the conveying of information regarding a debt directly or indirectly through any medium," 15 U.S.C. § 1692a(2), we held that "[a] communication to a consumer's attorney is undoubtedly an indirect communication to the consumer."  *Id.* at 368.  We also held that the "competent attorney" standard did not apply to the debtor's § 1692f(1) claim because "[t]he only inquiry under § 1692f(1) is whether the amount collected was expressly authorized by the agreement creating the debt or permitted by law."  *Id.*  This inquiry did not turn on the reader's sophistication.

*Allen* did not articulate a competent-attorney standard for FDCPA claims arising out of communications to a consumer's attorney.  But *Allen's* reasoning supports rejecting the "competent attorney" standard for the § 1692e(11) claim at issue here.  The inquiry under § 1692e(11) is whether the "mini-*Miranda*" disclosure was required in the Weinstein & Reilly communications and, if so, provided.

The sophistication of the party receiving the communication is irrelevant to that inquiry.

*Allen* also supports rejecting the "competent attorney" standard for the only part of the remaining § 1692e(5) and (13) claims that the parties have raised on appeal. These FDCPA claims are based on the allegations that the subpoenas failed to comply with Civil Rule 45, as incorporated by Bankruptcy Rule 9016 in two respects: because they were not served on the Simons directly, as required by Civil Rule 45(b)(1); and they did not include the text of Civil Rule 45(c)–(d), as required by Civil Rule 45(a)(1)(A)(iv). Each claim requires two inquiries. The first inquiry is whether the subpoenas failed to comply with the rules, as alleged. The second is whether the alleged failures to comply also violated § 1692e(5) or (13) of the FDCPA. *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) ("[W]e do not hold that all debt collector actions in violation of state law constitute *per se* violations of the FDCPA. Rather, the conduct or communication at issue must also violate the relevant provision of the FDCPA."). The District Court did not reach the second inquiry, and the parties do not address it on appeal. Instead, the District Court, and the parties on appeal, focused on whether the subpoenas violated the Rules, and did not discuss whether, if so, that is enough to state a claim under the FDCPA. The sophistication of the party receiving Weinstein & Riley's communications is irrelevant to determining the subpoena's compliance with Civil Rule 45 and Bankruptcy Rule 9016, which is the only inquiry before us on appeal. The "competent attorney" standard is not relevant to this inquiry. The District Court dismissed these two remaining § 1692e claims on the basis of preclusion by the Bankruptcy Code,

without reaching the question whether, if the subpoenas violated Civil Rule 45 and Bankruptcy Rule 9016, that was enough to violate the FDCPA.  We will reverse the preclusion ruling without resolving whether the alleged failures to comply with Civil Rule 45, as incorporated by Bankruptcy Rule 9016, also state claims under § 1692e(5) and (13) of the FDCPA.

### c.  The Allegations that State an FDCPA Claim

In sum, we affirm the dismissal of the Simons' § 1692e(5) and (13) claims based on alleged violations of Civil Rule 45 and Bankruptcy Rule 9016 for failing to identify the recording method in the Rule 2004 examination subpoenas and for issuing the subpoenas from a district other than where the Rule 2004 examinations were to be held.

The remaining FDCPA claims are the § 1692e(5) and (13) claims for violating Civil Rule 45(b)(1) by failing to serve the subpoenas directly on the individuals subpoenaed and Rule 45(a)(1)(A)(iv) by failing to include the text of Civil Rule 45(c)-(d), and the § 1692e(11) claim for failing to include the mini-*Miranda* warning in the letters and subpoenas.  We now consider whether the Bankruptcy Code precludes those claims.

### B.  The Relationship Between the Bankruptcy Code and the FDCPA

Appellees argue that if any of the Simons' claims survive dismissal, the Bankruptcy Code and Rules precludes them. The Simons contend that there is no basis to find that the Bankruptcy Code and Rules preclude their FDCPA claims. We have not previously addressed whether, or to what extent, an FDCPA claim can arise from a debt collector's communications to a debtor in a pending bankruptcy proceeding. The appellate and trial courts have reached varying and sometimes inconsistent conclusions about whether and when the Bankruptcy Code precludes FDCPA claims arising from communications to a debtor sent in the bankruptcy context. *Compare Simmons v. Roundup Funding*, *LLC*, 622 F.3d 93 (2d Cir. 2010); *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir. 2002); *and B-Real, LLC v. Chaussee* (*In re Chaussee*), 399 B.R. 225 (9th Cir. B.A.P. 2008) (finding that FDCPA claims were precluded by the Bankruptcy Code), *with Randolph v. IMBS, Inc.*, 368 F.3d 726 (7th Cir. 2004) (finding the FDCPA claims not precluded).[7]

---

[7]    District court and bankruptcy court decisions addressing the relationship between the FDCPA and Bankruptcy Code and Rules have proliferated over the last decade. Published decisions finding that FDCPA claims were not precluded by the Bankruptcy Code include *Gamble v. Fradkin & Weber, P.A.*, 846 F. Supp. 2d 377, 381–83 (D. Md. 2012) (postdischarge collection); *Rios v. Bakalar & Assocs., P.A.*, 795 F. Supp. 2d 1368, 1369–70 (S.D. Fla. 2011) (postdischarge collection); *Clark v. Brumbaugh & Quandahl, P.C., LLO*, 731 F. Supp. 2d 915, 919–21 (D. Neb. 2010) (automatic stay and discharge injunction violations); *Kline v. Mortg. Elec. Sec. Sys.*, 659 F. Supp. 2d 940, 949–51 (S.D. Ohio 2009) (inflated proof of claim); *Bacelli v. MFP, Inc.*,

729 F. Supp. 2d 1328, 1336–37 (M.D. Fla. 2010) (automatic stay and discharge injunction violations); *Evans v. Midland Funding LLC*, 574 F. Supp. 2d 808, 816–17 (S.D. Ohio 2008) (postdischarge collection); *Dougherty v. Wells Fargo Home Loans, Inc.*, 425 F. Supp. 2d 599, 604–06 (E.D. Pa. 2006) (postdischarge collection); *Marshall v. PNC Bank, N.A. (In re Marshall)*, 491 B.R. 217, 224–27 (Bankr. S.D. Ohio 2012) (postdischarge collection); *Atwood v. GE Money Bank (In re Atwood)*, 452 B.R. 249, 251–53 (Bankr. D.N.M. 2011) (automatic stay violation); *Price v. Am.'s Servicing Co. (In re Price)*, 403 B.R. 775, 790 n.14 (Bankr. E.D. Ark. 2009) (inflated proof of claim); *Gunter v. Columbus Check Cashiers, Inc. (In re Gunter)*, 334 B.R. 900, 903–05 (Bankr. S.D. Ohio 2005) (postdischarge collection); and *Molloy v. Primus Auto. Fin. Servs.*, 247 B.R. 804, 820–21 (C.D. Cal. 2000) (postdischarge collection).

Published decisions finding that FDCPA claims were precluded by the Bankruptcy Code include *Jenkins v. Genesis Fin. Solutions (In re Jenkins)*, 456 B.R. 236, 240 (Bankr. E.D.N.C. 2011) (proof of claim for time-barred debt); *McMillen v. Syndicated Office Sys., Inc. (In re McMillen)*, 440 B.R. 907, 911–13 (Bankr. N.D. Ga. 2010) (inflated proof of claim); *B-Real, LLC v. Rogers (In re Rogers)*, 405 B.R. 428, 430–34 (M.D. La. 2009), *rev'g*, 391 B.R. 317, 325–26 (Bankr. M.D. La. 2008) (proof of claim for time-barred debt); *Gilliland v. Capital One Bank (In re Gilliland)*, 386 B.R. 622, 623–24 (Bankr. N.D. Miss. 2008) (inflated proof of claim); *Williams v. Asset Acceptance, LLC (In re Williams)*, 392 B.R. 882, 885–87 (Bankr. M.D. Fla. 2008) (time-barred proof of claim); *Middlebrooks v. Interstate Credit Control, Inc*., 391 B.R. 434, 436–37 (D. Minn. 2008) (proof of claim for time-

barred debt); *Pariseau v. Asset Acceptance, LLC (In re Pariseau)*, 395 B.R. 492, 493–94 (Bankr. M.D. Fla. 2008) (false proof of claim); *Rice–Etherly v. Bank One (In re Rice–Etherly)*, 336 B.R. 308, 311–13 (Bankr. E.D. Mich. 2006) (inflated proof of claim); *Necci v. Universal Fid. Corp.*, 297 B.R. 376, 379–81 (E.D.N.Y. 2003) (postdischarge collection); *Cooper v. Litton Loan Servicing (In re Cooper)*, 253 B.R. 286, 291–92 (Bankr. N.D. Fla. 2000) (inflated proof of claim); and *Gray–Mapp v. Sherman*, 100 F. Supp. 2d 810, 813–14 (N.D. Ill. 1999) (inflated proof of claim); *see also Jacques v. U.S. Bank N.A. (In re Jacques)*, 416 B.R. 63, 74–81 (Bankr. E.D.N.Y. 2009) (proof of claim for time-barred debt); *Wan v. Discover Fin. Servs., Inc.*, 324 B.R. 124, 127 (N.D. Cal. 2005) (failure to follow FDCPA debt-verification procedures). *Cf. Adair v. Sherman*, 230 F.3d 890, 896 (7th Cir. 2000) (finding that issue preclusion prevents relitigation through the FDCPA of the amount of a debt after a bankruptcy court confirmed the proof of claim for the debt in an earlier bankruptcy proceeding). Many unpublished decisions also address whether the Bankruptcy Code and Rules preclude FDCPA claims.

Similar issues have arisen in cases involving bankruptcy debtors asserting violations of the Real Estate Settlement Practices Act (RESPA), 12 U.S.C. §§ 2605 *et seq.*, and Regulation X, 24 C.F.R. § 3500. *See, e.g., Conley v. Cent. Mortg. Co.*, 414 B.R. 157, 159–61 (E.D. Mich. 2009) (RESPA applies in bankruptcy); *Laskowski v. Ameriquest Mortg. Co. (In re Laskowski)*, 384 B.R. 518, 528 (Bankr. N.D. Ind. 2008) (RESPA applies in bankruptcy); *Figard v. PHH Mortg. Corp. (In re Figard)*, 382 B.R. 695, 710–12 (Bankr. W.D. Pa. 2008) (RESPA applies in bankruptcy);

The Ninth Circuit has taken a broad approach, holding that a debt collector's communications to a consumer debtor in the context of a bankruptcy proceeding cannot be the basis for an FDCPA claim. In *Walls v. Wells Fargo Bank*, *N.A.*, 276 F.3d 502, a debtor sued a bank for attempting to collect a debt that had been discharged in bankruptcy. The Ninth Circuit concluded that the debtor's FDCPA claim was barred because it was "based on an alleged violation of § 524" and consideration of it "necessarily entails bankruptcy-laden determinations." *Id*. at 510. To decide the FDCPA claim, the district court would first need to address issues typically decided by a bankruptcy court. These issues included whether the debtor's payments were "voluntary" under § 524(f) and whether she was required to enter a reaffirmation agreement under § 524(c). *Id*. The Ninth Circuit also found that the bankruptcy court's contempt power allowed the debtor to enforce the discharge injunction, removing the need to invoke the FDCPA.

In dismissing the FDCPA claim, the Ninth Circuit observed that a "' mere browse through the complex, detailed, and comprehensive provisions of the lengthy Bankruptcy

---

*Payne v. Mortg. Elec. Registration Sys., Inc. (In re Payne)*, 387 B.R. 614, 634 (Bankr. D. Kan. 2008) (RESPA applies in bankruptcy); *Holland v. EMC Mortg. Corp. (In re Holland)*, 374 B.R. 409, 440–43 (Bankr. D. Mass. 2007) (RESPA applies in bankruptcy); *Rodriguez v. R & G Mortg. Corp. (In re Rodriguez)*, 377 B.R. 1, 7–8 (Bankr. D.P.R. 2007) (RESPA applies in bankruptcy); *Ameriquest Mortg. Co. v. Nosek (In re Nosek)*, 354 B.R. 331, 338–39 (D. Mass. 2006) (RESPA does not apply in bankruptcy); *see also Jacques*, 416 B.R. at 70–74 (declining to decide the issue).

Code . . . demonstrates Congress's intent to create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike.'" *Id.* (quoting *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 914 (9th Cir. 1996)). The *Walls* court concluded that allowing an FDCPA claim based on a violation of the Bankruptcy Code's discharge injunction would "circumvent the remedial scheme of the Code under which Congress struck a balance between the interests of debtors and creditors by permitting (and limiting) debtors' remedies for violating the discharge injunction to contempt." *Id.*[8]

In *In re Chaussee*, 399 B.R. 225, the Ninth Circuit Bankruptcy Appellate Panel similarly concluded that filing allegedly time-barred proofs of claim in a pending bankruptcy case was not actionable under the FDCPA. Relying on *Walls* and *MSR Exploration*, the court found that "where the Code and Rules provide a remedy for acts taken in violation of their terms, debtors may not resort to other state and federal remedies to redress their claims lest the congressional scheme behind the bankruptcy laws and their enforcement be frustrated." *Id.* at 236–37.

---

[8]   The District Court noted that in *In re Joubert*, 411 F.3d 452 (3d Cir. 2005), we cited approvingly the Ninth Circuit's holding in *Walls* that 11 U.S.C. § 105(a) does not create an implied private right of action to remedy violations of the discharge injunction. *Simon*, 2012 WL 2891080, at *2 (citing *In re Joubert*, 411 F.3d at 456). As the District Court acknowledged, however, we have not ruled whether the Bankruptcy Code precludes FDCPA claims.

In addition to this categorical basis, the *Chaussee* court also found that an FDCPA claim based on a proof of claim filed in a pending bankruptcy would create direct conflicts with the Bankruptcy Code.  The *Chaussee* court explained:

> [a]ttempting to reconcile the debt validation procedure contemplated by FDCPA with the claims objection process under the [Bankruptcy] Code results in the sort of confusion and conflicts that persuades us that Congress intended that FDCPA be precluded in the context of bankruptcy cases.  We fail to understand how [a debt collector] could comply with FDCPA § 1692g and its various notice and informational requirements because those provisions conflict with the Code and Rules.

*Id.* at 239.  The FDCPA requires a debt collector to include a notice of the debtor's rights within five days of the initial communication to the debtor.  15 U.S.C. § 1692g(a).  The Bankruptcy Code's automatic stay provision prevents collection steps after a bankruptcy case is filed.  A debt collector could not satisfy the FDCPA by including the notice of rights in a proof of claim, because "a communication in the form of a formal pleading" is not an "initial communication" under the FDCPA.  If a debt collector had to send the notice of rights to a debtor in a pending bankruptcy case to avoid an FDCPA claim, that communication could violate the automatic stay.  To omit the notice in order to avoid violating the stay could violate the FDCPA.  This conflict was a specific, and narrower, basis for finding that the FDCPA claim could not proceed.

The Second Circuit reached a similar result in *Simmons v. Roundup Funding, LLC*, 622 F.3d 93, but without taking a broad analytical approach.  The debtors in *Simmons* filed an FDCPA claim alleging that the defendant debt collector had filed an inflated proof of claim in their bankruptcy proceeding.  The Second Circuit held that the debtors had no FDCPA claim, stating that "[t]here is no need to protect debtors who are already under the protection of the bankruptcy court, and there is no need to supplement the remedies afforded by bankruptcy itself."  *Id.* at 96.  The Bankruptcy Code provided both a mechanism to challenge proofs of claim and remedies if they were improperly filed, including by revoking fraudulent proofs of claim and by invoking the bankruptcy court's contempt power.  *Id.*  But the Second Circuit noted that while some courts "have ruled more broadly that no FDCPA action can be based on an act that violates any provision of the Bankruptcy Code, because such violations are dealt with exclusively by the Bankruptcy Code[,] . . . we are not compelled to consider [that rule] in this case."  *Id.* n.2 (citations omitted).

The Seventh Circuit in *Randolph v. IMBS*, *Inc.*, 368 F.3d 726, took a different approach.  In *Randolph*, the court considered consolidated appeals involving FDCPA claims arising from attempts to collect debts that violated the automatic stay.  The district courts dismissed the FDCPA claims on the ground that they were "precluded" or "preempted" by the Bankruptcy Code.  The Seventh Circuit reversed, explaining that "[w]hen two federal statutes address the same subject in different ways, the right question is whether one implicitly repeals the other."  *Id.* at 730.  Repeal requires either an "irreconcilable conflict between the statutes or a clearly expressed legislative decision that one replace the

other."  The court emphasized that repeal by implication "is a rare bird indeed."  *Id*.  The Seventh Circuit found no irreconcilable conflict between the FDCPA prohibitions and the Bankruptcy Code's discharge injunction and automatic stay provisions, and no clearly expressed congressional statement that the Code preclude FDCPA claims arising in bankruptcy.  Although the Bankruptcy Code and FDCPA provisions at issue in *Randolph* overlapped, the court found that because "[i]t is easy to enforce both statutes, and any debt collector can comply with both simultaneously," the FDCPA claim could proceed.  *Id*. at 730.

We will follow the Seventh Circuit's approach.  When, as here, FDCPA claims arise from communications a debt collector sends a bankruptcy debtor in a pending bankruptcy proceeding, and the communications are alleged to violate the Bankruptcy Code or Rules, there is no categorical preclusion of the FDCPA claims.  When, as is also the case here, the FDCPA claim arises from communications sent in a pending bankruptcy proceeding and there is no allegation that the communications violate the Code or Rules, there is even less reason for categorical preclusion.  The proper inquiry for both circumstances is whether the FDCPA claim raises a direct conflict between the Code or Rules and the FDCPA, or whether both can be enforced.

This approach is consistent with Supreme Court precedents recognizing a presumption against the implied repeal of one federal statute by another.  "'[W]hen two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.'"  *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Intern., Inc*., 534 U.S. 124, 143–44 (2001)

(quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974)). "Redundancies across statutes are not unusual events in drafting, and so long as there is no 'positive repugnancy' between two laws, a court must give effect to both." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992) (citation and internal quotation marks omitted).  Nor is "a statute dealing with a narrow, precise, and specific subject . . . submerged by a later enacted statute covering a more generalized spectrum." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976).  The Supreme Court has repeatedly held that "'[r]epeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal [is] clear and manifest.'" *Hawaii v. Office of Hawaiian Affairs*, 556 U.S. 163, 175 (2009) (quoting *Nat'l Assn. of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662 (2007)) (second alteration in original); *see also Branch v. Smith*, 538 U.S. 254, 273 (2003); *Posadas v. Nat'l City Bank of N.Y.*, 296 U.S. 497, 503 (1936).  Courts should "not infer a statutory repeal unless the later statute expressly contradicts the original act or unless such a construction is absolutely necessary in order that the words of the later statute shall have any meaning at all." *Nat'l Ass'n of Home Builders*, 551 U.S. at 662 (alterations and internal quotations marks omitted); *see also Branch*, 538 U.S. at 273 ("An implied repeal will only be found where provisions in two statutes are in irreconcilable conflict, or where the latter Act covers the whole subject of the earlier one and is clearly intended as a substitute." (internal quotation marks omitted)).

In contrast to its consistently strict application of the presumption against finding an implied repeal of one federal statute by another, the Supreme Court has shown a greater willingness to find that federal statutes and regulations

preempt state-law causes of action.  *See, e.g.*, *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (applying conflict preemption because "compliance with both federal and state regulations is a physical impossibility or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (citations and internal quotation marks omitted)); *see also Kurns v. R.R. Friction Prods. Corp.*, — U.S. —, 132 S. Ct. 1261, 1266 (2012) (applying field preemption "'when the scope of a [federal] statute indicates that Congress intended federal law to occupy a field exclusively'" (quoting *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995) (alterations in original))); *Arizona v. United States*, — U.S. — , 132 S. Ct. 2492, 2501 (2012) ("The intent to displace state law altogether can be inferred from a framework of regulation so pervasive . . . that Congress left no room for the States to supplement it or where there is a federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." (citation and internal quotation marks omitted)).

In *Walls*, the Ninth Circuit cited *MSR Exploration*, a preemption decision, to support finding that the Code precluded the FDCPA claims.  276 F.3d at 510 (citing *MSR Exploration*, 74 F.3d at 914).  But as the Seventh Circuit correctly noted, the Ninth Circuit's reliance on a precedent involving federal statutory preemption of a state-law claim to decide whether a federal statute precludes a federal-law claim is misplaced.  *Randolph*, 368 F.3d at 733; *see also J.E.M.*, 534 U.S. at 144 (rejecting the argument that "when [federal] statutes overlap and purport to protect the same commercially valuable attribute of a thing, such 'dual protection' cannot exist").

We also note that the Supreme Court has applied a federal statute to bankruptcy suits despite the existence of another, bankruptcy-specific, federal statute covering the same ground. In *Connecticut National Bank v. Germain*, 503 U.S. 249 (1992), the Court considered the appealability of a district court's interlocutory order in a bankruptcy appeal. The issue was the relationship between 28 U.S.C. §§ 1292 and 1291, which give appellate courts jurisdiction over district-court orders and final judgments, and 28 U.S.C. § 158(d), which gives appellate courts jurisdiction over appeals from district courts' final judgments in bankruptcy cases but is silent about jurisdiction over other appeals from orders. The bankruptcy trustee argued that appellate jurisdiction over interlocutory bankruptcy orders could not be proper under 28 U.S.C. § 1292, because applying the general appellate jurisdiction statutes (§§ 1291 and 1292) to bankruptcy would make the bankruptcy appellate jurisdiction statue (§ 158(d)) superfluous.   The trustee argued that interlocutory orders were not appealable beyond the district court because § 158(d) did not give courts of appeals jurisdiction.   While acknowledging that § 158(d) made § 1291 redundant in bankruptcy cases, the Supreme Court rejected the view that the courts of appeals lacked appellate jurisdiction under § 1292.   "Because giving effect to both §§ 1291 and 158(d) would not render one or the other wholly superfluous, we do not have to read § 158(d) as precluding courts of appeals, by negative implication, from exercising jurisdiction under § 1291 [or § 1292] over district courts sitting in bankruptcy." *Germain*, 503 U.S. at 253.

In *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1994), the Court again considered whether a general

jurisdictional statute could apply when a more specific bankruptcy jurisdiction statute addressed the same subject. After filing for bankruptcy protection, a debtor removed a state-court suit to federal court under both the bankruptcy removal statute, 28 U.S.C. § 1452(a), and the general federal removal statute, 28 U.S.C. § 1441(a).   In considering the state-court plaintiff's remand motion, the bankruptcy court held that although the removal was untimely under the bankruptcy removal statute and Federal Rule of Bankruptcy Procedure 9027, removal was timely under the general federal removal statute and § 1446.  The bankruptcy court concluded that, as a result, removal was proper and there was federal jurisdiction over the suit.   On appeal, the district court reversed, finding removal under both the general and bankruptcy removal statutes to be untimely.    The Sixth Circuit Court of Appeals dismissed the subsequent appeal for lack of appellate jurisdiction under §§ 1447(d) and 1452(b). The Supreme Court affirmed the Sixth Circuit's dismissal. The Supreme Court found that § 1447(d) barred appellate review of remand orders regardless of whether the case was removed under the general removal statute or under the bankruptcy removal statute.   The Court explained that "[t]here is no express indication in § 1452 that Congress intended that statute to be the exclusive provision governing removals and remands in bankruptcy.  Nor is there any reason to infer from § 1447(d) that Congress intended to exclude bankruptcy cases from its coverage."  *Things Remembered, Inc.*, 516 U.S. at 129.  This conclusion was not affected by "[t]he fact that § 1452 contains its own provision governing certain types of remands in bankruptcy."   *Id*.  Because "[t]here is no reason §§ 1447(d) and 1452 cannot comfortably coexist in the bankruptcy context," the Court explained that it was required to "give effect to both."  *Id*.

The Supreme Court has also been reluctant to limit the FDCPA because other, preexisting rules and remedies may also apply to the conduct alleged to violate the Act. In *Heintz*, 514 U.S. at 291, an attorney sued in state court to recover money allegedly owed to the firm's client. The state-court defendant sued the attorney in federal court, alleging an FDCPA violation for the attorney's effort to collect an amount not "authorized by the agreement creating the debt," 15 U.S.C. § 1692f(1), and for making a false representation of the amount of the debt, § 1692e(2)(A). As noted above, the case eventually reached the Supreme Court, which held that the term "debt collector" includes an attorney who regularly, through litigation, attempts to collect consumer debts. The creditor's attorney argued that applying the FDCPA to litigation activity would create "harmfully anomalous results that Congress simply could not have intended." *Heintz*, 514 U.S. at 295. The attorney argued that § 1692c(c), which provides that a debt collector may not "communicate further" with a debtor who requests that the collector "cease further communication," would prevent an attorney from suing a debtor, initiating settlement discussions, or filing dispositive motions. The Court refused to read the FDCPA as prohibiting suits to collect debts. "[I]t is easier to read § 1692c(c) as containing some such additional, implicit, exception than to believe that Congress intended, silently and implicitly, to create a far broader exception, for all litigating attorneys, from the Act itself." *Id.* at 297. The Court noted that many litigation activities would be authorized under the exception that a debt collector may "'notify the consumer that the debt collector or creditor may invoke' or 'intends to invoke' a 'specified remedy' (of a kind 'ordinarily invoked by [the] debt collector or creditor')." *Id.* at 296 (quoting 15

U.S.C. § 1692c(c)(2), (3)).  The Supreme Court held that the FDCPA applied despite the availability during litigation of judicial oversight, due-process protections, detailed procedural rules, and remedies to curtail and punish improper actions by creditors' attorneys.[9]  As the Seventh Circuit observed on remand, "[t]here is no stated exclusivity in the FDCPA as the means to redress collections errors.  State law sanctions (the equivalent of Fed. R. Civ. P. 11) apply to defendants in their capacity as lawyers, and do so jointly with

---

[9]  In *Heintz*, the Supreme Court stated that it was abrogating *Green v. Hocking*, 9 F.3d 18 (6th Cir. 1993), a Sixth Circuit decision finding that an attorney could not be subject to the FDCPA for actions he took in the course of litigation.  514 U.S. at 294.  The Sixth Circuit had found that applying the FDCPA to litigation conduct would "contravene[] the elaborate control on lawyers' conduct through the Rule 11 process."  *Green,* 9 F.3d at 22.  The appeals court noted that the trial court had discretion to order sanctions under Rule 11 because a "basic inquiry would have shown that [the factual basis for the suit] was inaccurate."  *Id*.  It explained that the mandatory relief imposed by the FDCPA would encroach on a trial court's discretion under Rule 11 "to regulate its forum."  *Id*.  The court concluded that it was "unwilling to impose a system of strict liability that conflicts with the current system of judicial regulation."  *Id*.  The Sixth Circuit's position in *Green* is almost identical to the positions advocated by the appellees in this case and adopted by the Second Circuit, in *Simmons*, and Ninth Circuit, in *Walls*.  We decline to adopt in the bankruptcy context the same positions that, in the general litigation context, failed to persuade the Supreme Court.

the Act." *Jenkins v. Heintz*, 124 F.3d 824, 834 (7th Cir. 1997).

The appellees contend that another Supreme Court decision, *Kokoszka v. Belford*, 417 U.S. 642, 651 (1974), compels the conclusion that the FDCPA's scope ends where the Bankruptcy Code's begins. *Kokoszka* addressed whether the Consumer Credit Protection Act's (CCPA) limits on wage garnishment would exempt from bankruptcy protection part of a debtor's income tax refund.[10] To be exempt, a refund would have to be classified as "earnings." The Court found that "earnings" "did not include a tax refund, but [was] limited to 'periodic payments of compensation and [did] not pertain to every asset that is traceable in some way to such compensation.'" *Id*. at 651 (quoting *In re Kokoszka*, 479 F.3d 990, 997 (2d Cir. 1973)).[11] As a result, tax refunds were not

_____

[10]  Section 1673(a) and (a)(1) of the CCPA provide that "the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed . . . 25 per centum of his disposable earnings for that week."

[11]  The CCPA defines "earnings" as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program."   15 U.S.C. § 1672(a) (1968).   It defines "disposable earnings" as "that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld." *Id.* § 1672(b) (1968).   "Garnishment" means "any legal or equitable procedure through which the earnings of any

covered by the CCPA garnishment provisions.  In interpreting those provisions, the Court looked to the CCPA's purpose and legislative history. The Court explained that in enacting the CCPA, Congress sought to reduce the need for bankruptcy but did not seek to regulate the bankruptcy process:

> An examination of the legislative history of the Consumer Protection Act makes it clear that, while it was enacted against the background of the Bankruptcy Act, it was not intended to alter the clear purpose of the latter Act to assemble, once a bankruptcy petition is filed, all of the debtor's assets for the benefit of his creditors.    Indeed, Congress' concern was not the administration of a bankrupt's estate but the prevention of bankruptcy in the first place by eliminating "an essential element in the predatory extension of credit resulting in a disruption of employment, production, as well as consumption" and a consequent increase in personal bankruptcies. . . . [I]f, despite its protection, bankruptcy did occur, the debtor's

---

individual are required to be withheld for payment of any debt." *Id.* § 1672(c) (1968).

> protection and remedy remained
> under the Bankruptcy Act.

*Id.* at 650–51 (citations and footnotes omitted).

The appellees argue that because Congress passed the FDCPA as an amendment to the CCPA,[12] the Supreme Court's conclusion about the CCPA's garnishment provisions applies with equal force to the FDCPA. We disagree. As the Seventh Circuit recognized in *Randolph*, the Supreme Court's broad pronouncements about the CCPA's relationship to the Bankruptcy Code were at minimum dicta and at most a gloss on the CCPA's ambiguous definitions of "earnings" and "garnishment." *Randolph*, 368 F.3d at 731 (finding that the Supreme Court's discussion in *Kokoszka* on the relationship between the CCPA and Bankruptcy Act was "not expressed as a holding"). Unlike the CCPA's garnishment provisions, the FDCPA "regulates how debt collectors interact with debtors, and not what assets are made available to which creditors and how much is left for debtors (the principal subjects of the Bankruptcy Code)." *Id.* As a result, the Supreme Court's conclusions in *Kokoszka* about the relationship between the Bankruptcy Code and the CCPA's garnishment provisions do not apply to the relationship between the Code and the FDCPA.

Finding no broad categorical preclusion, we turn to the narrower question of whether the Simons' specific allegations present such a conflict with the Bankruptcy Code and Rules as to preclude their FDCPA claims.

---

[12] Pub. L. 95-109; 91 Stat. 874, codified as 15 U.S.C. § 1692–1692p.

## C. The Relationship Between the FDCPA § 1692e(5) and (13) Claims and the Bankruptcy Code and Rules

The Simons' remaining claims under § 1692e(5) and (13) of the FDCPA are based on alleged violations of subpoena requirements. Bankruptcy Rule 2004 permits a court, "[o]n motion of any party in interest . . . [to] order the examination of any entity." Fed. R. Bankr. P. 2004(a). The Bankruptcy Rules specify how a creditor is to issue notice of, and conduct, a Rule 2004 examination. A Rule 2004 examination may be used to cover a wide range of subjects relating "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b); *see also In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) ("[C]ourts have recognized that Rule 2004 examinations are broad and unfettered and in the nature of fishing expeditions."). "The court may for cause shown and on terms as it may impose order the debtor to be examined under this rule at any time or place it designates, whether within or without the district wherein the case is pending." Fed. R. Bankr. P. 2004(d). If the party to be examined is a debtor, and the debtor lives more than 100 miles from the place of examination, "the mileage allowed by law to a witness shall be tendered for any distance more than 100 miles from the debtor's residence at the date of the filing of the first petition commencing a case under the Code or the residence at the time the debtor is required to appear for the

40

examination, whichever is the lesser."   Fed. R. Bankr. P. 2004(e).  The District of New Jersey Local Bankruptcy Rules state that "[i]f a party from whom an examination or document production is sought under Fed. R. Bankr. P. 2004 agrees to appear for examination or to produce documents voluntarily, no subpoena or Court order is required."  D.N.J. LBR 2004-1(a).  But a party that serves a subpoena for a Rule 2004 examination and document production may compel performance under Bankruptcy Rule 9016 and Civil Rule 45. *See* Fed. R. Bankr. P. 2004(c) ("The attendance of an entity for examination and for the production of documents, whether the examination is to be conducted within or without the district in which the case is pending, may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial. . . ."); *see also* Fed. R. Bankr. P. 9016 ("Rule 45 F. R. Civ. P. applies in cases under the Code.").

To be valid, a subpoena must comply with Civil Rule 45's requirements.  As the appellees point out, even if the Simons are correct that the Rule 2004 examination subpoenas at issue did not comply with Bankruptcy Rule 9016 and Civil Rule 45, the Simons have remedies for such noncompliance available under the Code and Rules.   Under Civil Rule 45(c)(2)(B)–(c)(3), a subpoena recipient may object or move to quash or modify a subpoena for several reasons, including that it fails to comply with Bankruptcy Rule 9016 and Civil Rule 45.   In addition, a subpoena recipient may seek sanctions under the bankruptcy court's civil contempt power. *See In re Joubert*, 411 F.3d 452, 455 (3d Cir. 2005) (stating that 11 U.S.C. § 105 provides bankruptcy courts with a contempt remedy); *see also Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 445 (1st Cir. 2000) ("[Section] 105 provides a bankruptcy court with statutory contempt powers, in addition

to whatever inherent contempt powers the court may have. Those contempt powers inherently include the ability to sanction a party." (citations omitted)).

The appellees have not shown, however, why the availability of these bankruptcy remedies would preclude the Simons' FDCPA claims for violating Civil Rule 45 and Bankruptcy Rule 9016 subpoena rules by failing to serve the subpoenas directly on the individuals subpoenaed and failing to include the text of Civil Rule 45(c)–(d) in the subpoenas. The Simons moved to quash the subpoenas in the Bankruptcy Court. The Bankruptcy Court found the subpoenas defective and quashed them. No conflict exists between these Bankruptcy Code or Rule obligations and the obligations the Simons seek to impose under the FDCPA. A creditor may comply with the obligations of Bankruptcy Rule 9016 and Civil Rule 45 on the one hand and with the FDCPA on the other. Nor is there a conflict between the remedies for noncompliance available in a bankruptcy court and the remedies available under the FDCPA. The fact that the bankruptcy court has other means to enforce compliance with the subpoena rules does not conflict with finding liability or awarding damages under the FDCPA for violations based on a debt collector's failure to comply with the subpoena rules. As a result, we reverse the dismissal of the Simons' remaining FDCPA claims under § 1692e(5) and (13).

### D. The Relationship Between the FDCPA § 1692e(11) Claim and the Bankruptcy Code and Rules

The Simons' claim under § 1692e(11) of the FDCPA leads to a different result. The Simons alleged that the

appellees are liable under the FDCPA because the letters and
Rule 2004 examination subpoenas failed to disclose that they
were sent by a debt collector attempting to collect a debt and
that "any information obtained [would] be used for that
purpose." 15 U.S.C. § 1692e(11). The Bankruptcy Code's
automatic stay provision forbids "any act to collect, assess, or
recover a claim against the debtor that arose before the
commencement" of the bankruptcy proceeding. 11 U.S.C. §
362(a)(6). Several courts have held that sending a §
1692e(11) notice violates the automatic stay. *See, e.g.*, *Maloy
v. Phillips*, 197 B.R. 721, 723 (M.D. Ga. 1996); *Divane v. A
& C Elec. Co., Inc.*, 193 B.R. 856, 859 (N.D. Ill. 1996);
*Hubbard v. Nat'l Bond & Collection Assoc., Inc.*, 126 B.R.
422, 428–29 (D. Del. 1991). If, as the Simons argue, a
§ 1692e(11) claim could arise from the fact that the Weinstein
& Riley letters and subpoenas did not include the "mini-
*Miranda*" notice, the firm would violate the automatic stay
provision of the Bankruptcy Code by including the notice or
violate the FDCPA by not including the notice. This conflict
precludes allowing a claim under § 1692e(11) for failing to
include the "mini-*Miranda*" notice in the letters and Rule
2004 examination subpoenas sent to the Simons through their
bankruptcy counsel.[13]

## IV. Conclusion

---

[13]   We do not reach the question whether the subpoenas (but
not the letters) are exempt from the § 1692e(11) notice
requirements as "formal pleading[s] made in connection with
a legal action." 15 U.S.C. § 1692e(11). That is, we do not
decide whether a Rule 2004 subpoena is an initial
communication under § 1692e(11).

We will affirm in part and reverse in part the District Court's dismissal of the Simons' claims. We will affirm the dismissal of the Simons' § 1692e(5) and (13) claims for allegedly violating the Civil Rule 45 and Bankruptcy Rule 9016 subpoena rules by failing to identify the recording method in the Rule 2004 examination subpoenas and by issuing the subpoenas from a district other than where the examinations were to be held. We will affirm the dismissal of the Simons' § 1692e(11) claim because the mini-*Miranda* requirement conflicts with the automatic stay provision of the Bankruptcy Code. We will reverse the dismissal of the Simons' remaining § 1692e(5) and (13) claims for allegedly violating Civil Rule 45 and Bankruptcy Rule 9016 by failing to serve the subpoenas directly on the individuals subpoenaed and failing to include the text of Civil Rule 45(c)–(d) in the subpoenas, and we will remand.